Thank you. Thank you. The second case this morning is number 15-1546, Clean Air Engineering versus Advanced Clean-up Technologies. This is Mr. Lawrenson. May it please the court, the district court erred in two fundamental ways. First, at summary judgment, the district court held that these products were not capable of being contracted, even though it recognized that they contracted in some form. Thus, for the first time... How did they contract though? Their shape didn't change. Their angle decreased as you went up, but there wasn't any movement of those hoods themselves. That's correct, Your Honor. And at the district court level, two forms of contraction were discussed, dynamic contraction and static contraction. Dynamic contraction involves a structure change in its physical shape in order to decrease its circumference, whereas static contraction involves an object who by its nature can decrease its circumference, such as when a bonnet is lowered over a ship's stack and the relative circumference of the bonnet decreases relative to that of the ship's stack. How does the funnel grasp the stack? The key here is a term, sufficiently. The claim language says that it must sufficiently grasp the ship's stack. Now during claim construction, although the district court did not construe the claim sufficiently grasped, the court did provide guidance as to what's required based off what's in the specification. The district court explained that the bonnet needs to maintain its position over the stack such that as the ship and the bonnet move relative to one another up to five vertical or horizontal feet, the bonnet will maintain its position on the stack and not come off. And at the same time, it won't damage the stack or damage the bonnet. And Larry Reeves, KME's technical consultant, testified that this occurs as the bonnet's lowered over the ship's stack, it only has about two inches, possibly less, of space between it. And he specifically stated that the bonnet tends to bound back and forth, using the stack as a guide to keep it from coming completely off. Now we maintain that the question of the fact that it stays on the stack and avoids coming completely off, at the very least, creates an issue of fact that the jury should decide and shouldn't be decided at summary judgment. The district court in its ruling required that there be complete and constant contact, but nothing in the specification and nothing in the claim language indicates that this needs to occur. And the key here, as the district court recognized during claim construction on A1656, is that contractible and sufficiently grasped must be read together, they go hand in hand. So what we're essentially looking for here is an accused device that, when it contracts in some manner, such that its relative circumference decreases with respect to that of the stack, you end up having a situation where the ship can move and rock on the water and the bonnet will not come off the stack. That's exactly what happens here. And the claim limitation is therefore met, or at the very least, the jury should decide whether that claim limitation has been met. I also note that the district court rejected Kamey's narrow construction of contractible, which was to decrease the circumference or start to constrict the bonnet until it substantially contacted the entire perimeter of the stack, and instead adopted the broad construction of capable of being contracted. So we maintain that this involve allows all forms of contraction, whether they be dynamic or static forms of contraction, so long as at the end of the day, the bonnet does not come off the ship stack, and some form of contact with the ship stack causes that to happen. Turning to claim 19, the district court admitted the testimony of Dr. Pritchett-Vack at trial, even though Dr. Pritchett-Vack did not include his opinions in his expert report. The entire basis of Dr. Pritchett-Vack's opinions concerning claim 19 were in paragraph 40 of the expert report, and he stated, although the figures in Tabool are directed to a car, Tabool expressly- Claim 19, not 18. Sorry. Claim 19, Your Honor. I'm sorry if I misspoke. Dr. Pritchett-Vack stated, although the figures in Tabool are directed to a car, Tabool explicitly recites that its apparatus is applicable to other types of vehicles, including marine vessels. Thus, Tabool discloses that its apparatus may be used with a boat, a ship, or other ocean-going vessel, and that's at A3573-74, paragraph 40. That's the entirety of Dr. Pritchett-Vack's disclosed opinion concerning whether Tabool anticipates an ocean-going vessel. Then at trial, none of which was in the expert report, Dr. Pritchett-Vack testified that it would only take a person having ordinary skill in the art in 2004 a couple of days to change what was in Tabool, which is essentially a catalytic converter designed to go over an exhaust pipe of a car and make it large enough and scale it up such that it would be operable for an ocean-going vessel. He also testified that the genus of motor vehicle and boat was extremely small, such that a person with ordinary skill in the art would be able to envision the entire genus and all the species therein. And he also testified that a person with ordinary skill in the art would not consider any type of maritime regulations, any type of missions regulations, which are specialized for large ocean-going vessels. None of this was included in his expert report, and yet he was allowed to testify about this during trial. The entire trial turned on Dr. Pritchett-Vack's testimony, and allowing him to introduce his prejudice to my client, because without his testimony, Kamey could not have met his burden to show by clear and convincing evidence that Claim 19 was valid as anticipated by Tabool. Because of the prejudice that was suffered by my client, the burden then shifts to Kamey to show that there was no damage caused by that prejudice. And Kamey has not done anything in its briefs to show that this is untrue. And so as a result, a new trial is warranted as to the validity of Claim 19 with the exclusion of Dr. Pritchett-Vack's testimony. Also of note, Dr. Pritchett-Vack did testify at deposition that his opinions concerning whether a person of ordinary skill in the art reading Tabool would anticipate Claim 19 was not necessarily part of his expert work, and therefore attempted to testify as a lay expert, essentially. To allow him to do this would circumvent the policy purposes of Rule 26 and Rule 37, because essentially any expert could leave the matter outside of his expert report, and then later at trial supplement that testimony and say, oh, this is not part of my work as an expert. This is simply me as a lay person who happens to have a great deal of knowledge concerning this subject matter, testifying as to what I personally believe. And again, this would violate the spirit of Rule 26 and Rule 37, and would be against the public policy. So for these reasons, there's no foundation for his testimony, and since the entire trial turned on that testimony, a new trial is warranted for Claim 19. We therefore ask that this court reverse the district court's summary judgment regarding Claim 1 and all of its dependent claims, and Claim 19, and order a new trial for Claim 19.  Thank you. Thank you, Your Honors. I'm going to reserve the remainder of your time. Ms. Mienberg? May it please the Court, this Court should affirm the district court's summary judgment of non-infringement as to Claim 1 of the 710 patent for at least two reasons. First, it is undisputed that the bonnets and the accused products are rigid steel in the shape of an inverted funnel. They are not contractible around the ship stack to sufficiently grasp the ship stack to hold the bonnet in place as Claim 1 requires. Second, it is undisputed that the inverted funnels of the accused products are suspended over and overlapping the ship stack, and that there are several inches of space between the stack and the sides of the funnel, therefore, the inverted funnels of the accused products do not grasp the stack at all as Claim 1 requires. With respect to contractible, this initial claim was rejected in view of a prior art reference, Kuklejda, where a prior art bonnet that was an inverted truncated cone was similar to the accused products. The applicant, in response to that rejection, added the claim limitation, contractible around the ship stack to sufficiently grasp the ship stack in order to gain allowance. The applicant further distinguished the reference, stating that that reference does not describe a bonnet which may be contracted around the stack to hold the bonnet in place. Furthermore, the applicant also stated that Košleta does not describe a contractible bonnet. Now, that is the only place in the entire intrinsic record where the word contractible appears, but it is clear from that statement that the applicant viewed the Kuklejda reference as a rigid bonnet and did not view it as contractible, changing in size or shape. The applicant can now try to reclaim subject matter that was clearly disclaimed during prosecution. Although the specification does not use the word contractible, it consistently describes the bonnet from the background through the summary, through the written description, as a device that changes in size or shape by compressing, springing, or closing around the stack. There is no disclosure, no example, no hint of any bonnet other than one that has dynamic structural capability to change in size or shape. Additionally, the plain meaning of the term contractible means able to be shrunk or capable of contracting. The steel inverted funnels of the accused products do not shrink. They do not contract. They are rigid and unable to change in size or shape. Additionally, with respect to sufficiently grasp, it's undisputed that the steel funnels of the accused products swing back and forth in the wind, and though they may bump the stack, they do not sufficiently grasp the stack. This intermittent isolated contact does not amount to grasping the stack to hold the bonnet in place as the claim requires. With respect to Dr. Prince-Fact's testimony, the district court did not abuse its discretion in admitting Dr. Prince-Fact's testimony offered at trial, where he testified that one of ordinary skill in the art would envision an ocean-going vessel when reading the word boat in tibule. Applicants have waived any objections to this evidence. Appellants did not file a daubert challenging Dr. Prince-Fact's expert opinion. They did not object to Dr. Prince-Fact's direct trial declaration on any basis relating to anticipation for which this information was offered. They filed no motions in limine, and they stipulated to the admission of his deposition, his expert report, and his declaration in support of motion for summary judgment, all of which set forth the basis of his personal experience indicating that he has experience in naval architecture and can attest to that one of ordinary skill in the art at the time of the invention would understand that the word boat in tibule would be understood to mean an ocean-going vessel. There's no prejudice and no abuse of discretion in this instance. Okay. Thank you very much, Ms. Maber. Mr. Lordson, you have a little over seven minutes here if you need it. I'll try to do it shorter than that, Your Honor. Okay. Why doesn't the prosecution history indicate that your view that this includes static, or contracting? Your Honor, as this court has stated, the prosecution history disclaimer requires a clear and unequivocal surrender of the scope of the claim. It cannot be ambiguous. It needs to be unmistakable. Cayme does not give a complete picture of what occurred during the prosecution history. In distinguishing over Coquitla, the patentee did not simply say that the bonnets were contractible, and that the bonnets in Coquitla were not contractible. Instead, the patentee said that Coquitla does not describe a bonnet which may be contracted on a stack to hold the bonnet in place. And again, this is that interplay between contractibility and sufficient grasping. Coquitla involves a bonnet that is perpendicular to the ground, designed to be held above an emission source, and held in place with a pivot and a cylinder. Coquitla also, in some embodiments, has curtains that lower over the emission source. Those curtains are not capable of being contracted over a grasping stack, and they have slits in them. Even if one were to lower the bonnet in Coquitla over a ship's stack, which is not its intended purpose, since it's stated in Coquitla that it always maintains its position above the stack and always 90 degrees to the ground, the bonnet would then not be able to grasp the stack because, as the ship moved and rocked in the water, the pivot and the cylinder, which are designed to keep the bonnet stable, would not allow relative movement, and there's a chance that the stack or the bonnet would become dislodged or become disconnected. So by using this language, saying that it does not describe a bonnet that can be contracted to hold the bonnet in place, which appears on A-130, the patentee was providing a different reason than simply a rigid, conical bonnet as Cayley represents. And this provides enough ambiguity so that there's not some clear and unequivocal disclaimer of all bonnets that may statically contract. Turning back to the sufficiently grasped point, the key word here, again, is sufficiently. In the court case Vidalia v. Google, this court was confronted with a construction of a term, images being substantially elevations. The district court held in that case that the images are supposed to be vertical, flat images, essentially entire elevations, and in doing so, read out the word sufficiently. This court reversed that judgment and said that spherical images and other types of images would be permitted so long as objects within those images were vertical and flat and essentially elevational views, and this was based off of the word substantially. Here, we're looking at the word sufficiently, which the ordinary definition of sufficiently is enough to meet the needs of the situation for a proposed use, as stated in A-1083. And so we're looking for a bonnet that meets the purpose, and the purpose is to maintain its position on the ship stack and not come off. If intermittent contact is all that's required to do this, then that's a sufficient grasp. The district court, even, in making its ruling, you'll know, on A-20, did not use the word sufficient. It dropped that language from its description and just said there's no grasp. And in reading out this key word, it's violating the law of this court and is creating a situation that is simply unintentable. With respect to Dr. Pinchevac, we disagree that any objections were waived. Dr. Pinchevac specifically testified that he was not basing his position on what a person having ordinary skill in the art would think when they saw taboo on his expert work in the case. And so, in doing so, he created a situation where counsel filed objections to his testimony based on federal rule of evidence 602, saying that there wasn't a proper foundation. Had he said it was his expert work in the case, then it would have been proper to file an objection based off rule 26 and rule 37. Notwithstanding that, rule 37 is designed to be self-executing to avoid having a trial where an expert brings in subject matter that was not originally in his expert report. Counsel also mentioned that throughout the specification, throughout the written description, there's only one kind of contraction that's discussed. But this, again, goes against the law of this circuit. The specification is not required to disclose more than even one embodiment. As long as the specification teaches the preferring embodiment, the claims are allowed to claim broader than the specification. And in this case, we have several situations where, for instance, one of the embodiments involves a cage with springy ribs that are then used to contract in a dynamic sense to decrease the circumference around the ship's stack. These don't appear in Claim 1, but they do appear in Claims 8, 9, and 10, and 11. And it would therefore be improper to read into Claim 1 these limitations of this dynamic contraction. And while there may be other forms of dynamic contraction that could still exist in Claim 1, we then run into this issue of tightenable and tightening, which are used in other claims, which are used to mean constricting in a dynamic sense. And this court has held that when different words are used in different claims, there's a presumption that they should have a different meaning. And so if we were to prescribe the same meaning to them, we'd be filing the doctrine of claim differentiation. Claim 1 is written very broadly and is written in a way that it can cover all forms of contraction. And in later claims, the patentee limited the forms of contraction to dynamic forms of contraction. So there's no reason now to import from the specification only dynamic forms of contraction. If Your Honor, I have no further questions. Okay. Thank you, Mr. Lawrence. And we thank both counsel.  Thank you, Your Honor.